ALICE U. BROUGHEY *vs.* MOWRY GRAIN COMPANY.

JULY 8, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is a petition brought by a widow for compensation, under the workmen's compensation act, for the death of her husband, which is alleged to have resulted from an accident arising out of and in the course of his employment by the respondent. The cause was heard on appeal from the director of labor by a justice of the superior court and decided in favor of the petitioner. Thereafter a decree was entered in that court in accordance with that decision. The respondent has duly appealed from such decree to this court and has filed its reasons of appeal which, in summary, state that the justice of the superior court erred in all his findings in applying the law to the facts.

There is no dispute over the fact that the deceased workman died as a result of an accident arising out of and in the course of his employment by the respondent. The chief question at issue between the parties is whether, under the evidence in this case, petitioner is conclusively presumed to have been wholly dependent for support upon her husband at the time of his injury. Another question is whether she is entitled to an award of compensation at the rate of $14 a week or an award at the rate of $10 a week. This question involves a construction of general laws 1923, chapter 92, sec. 6, as recently amended.

The facts pertinent to the determination of these issues are briefly as follows. Alice U. Broughey is the widow of Michael H. Broughey, an employee of the respondent, whose average weekly wages were $20, at the time he was accidentally killed in the course of his employment on January 7, 1937. She was committed to a hospital for mental diseases in 1908, at Worcester, Massachusetts, while living in that state with her husband and children. In 1927 she was transferred to the state hospital for mental diseases at Howard, Rhode Island, and on the date of her husband's death she was still an inmate of that institution. Early in

March 1937, however, she was released and has since been living at North Smithfield, Rhode Island.

Michael H. Broughey left surviving him a son, Herbert Broughey, now thirty years of age, who is alleged to have been wholly dependent for support upon his father. There was undisputed evidence that Herbert had always been physically incapacitated from earning his living and had always lived with his father and been dependent upon him.

The petitioner testified at the hearing before the director of labor, and her testimony, along with that of certain other witnesses who testified at that hearing, was, by stipulation of the parties, certified by the director of labor to the superior court to stand as evidence before that court. In addition thereto the petitioner presented in the superior court medical testimony to the effect that she was mentally competent to sue for and receive compensation, and more particularly, that she was qualified to take care of her business affairs. The respondent offered no evidence on this point.

On this evidence the trial justice found that the petitioner was justifiably living apart from her husband on January 7, 1937, and that she was entitled to recover compensation under the workmen's compensation act for his death; that Herbert Broughey was dependent upon his father Michael Broughey, within the meaning of that act; that there were no other dependents; that the petitioner was mentally competent to sue for and receive such compensation; and finally that such compensation should be paid to her in the sum of $14 a week for five hundred weeks for her support and the support of her son Herbert. The trial justice also found that she was entitled to the sum of $300 for the burial of her husband, as provided in sec. 9 of the workmen's compensation act. This latter award is not disputed by the respondent.

Our statute conclusively presumes the dependency of a wife upon her husband, "with whom she lives or from whom she was living apart for a justifiable cause, or because he had

deserted her, or upon whom she is dependent at the time of his death." G. L. 1923, chap. 92, art. II, sec. 7. This section also provides that: "The findings of the superior court upon the questions of such justifiable cause and desertion shall be final."

Was the petitioner living apart from her husband for a justifiable cause at the time of his death? If she was, then her dependency is conclusively presumed by the statute. At the time of her husband's death she was living apart from him at a hospital for mental diseases. She was there with his consent and at his desire. There was no ill feeling between them, and it is clear that the only reason for their separation at that time was some mental ailment from which she was suffering and for which she could receive treatment and care at the hospital. On this showing, the trial justice has found that her living apart from her husband was justifiable in fact. If there is any legal evidence to support that finding, it must stand, as sec. 7 makes it final. *Jillson* v. *Ross,* 38 R. I. 145, 150.

The respondent argues that there is no legal evidence to support this finding, because it is undisputed that the separation was not induced through any fault of the husband. He contends that the words in the statute—"from whom she was living apart for a justifiable cause"—have a special meaning which can be definitely determined by considering the circumstances under which they were imported into the statute.

Originally the statute read: "The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee (a) a wife upon a husband with whom she lives or upon whom she is dependent at the time of his death." On April 19, 1917, the legislature amended this clause by inserting, after the word "lives", "or from whom she was living apart for a justifiable cause, or because he had deserted her."

The respondent makes much of the fact that this amendment of the act was adopted less than a month after this court had decided, on March 28, 1917, in the case of *Sweet v. The Sherwood Ice Co.*, 40 R. I. 203, that a wife, who had not lived with her husband at the time of the accident which caused his death and who had been granted a divorce from him on the ground of neglect to provide, was not living with her husband at the time of his death, within the meaning of the workmen's compensation act and, therefore, could not be conclusively presumed to be dependent upon him. Respondent argues that the celerity of the legislature in amending the original clause so that living apart for a justifiable cause would furnish a conclusive presumption of dependency renders the conclusion inescapable that the words "a justifiable cause" which they put into the statute means only a cause which would furnish a wife a good defense to her husband's petition for divorce on the ground of desertion.

This contention is plausible and is not without some force. It is not, however, in our opinion, clear that there is no escape from the conclusion stated by the respondent or that such conclusion is the only conclusion consistent with a reasonable construction of the statute, and especially since the statute in question is the workmen's compensation act. This act, although in derogation of the common law, has been definitely and, we think, finally construed as a remedial statute, which is to be liberally interpreted in order to effect as fully as possible its beneficent purposes. *Bernier v. Narragansett Electric Co.*, 56 R. I. 438; *Distante v. United Electric Rys. Co.*, 53 R. I. 258; *Lopes v. B. B. & R. Knight, Inc.*, 50 R. I. 16; *Donahue v. R. A. Sherman's Sons Co.*, 39 R. I. 373. The foregoing cases are cited not so much for their authority in support of the preceding statement as for their illustrations of the extent to which this court has gone in applying the rule of liberality, in order to give the injured workman or his dependents the benefits intended by the act.

In view of such liberality in the past should we now, in the instant case, adopt the view of the respondent and construe the words "a justifiable cause" as meaning only a cause which would furnish a wife living apart from her husband a good defense to his petition for divorce on the ground of desertion? Would not such a construction be a narrow, technical construction rather than a liberal one?

Were it not for the sequence of the legislative amendment and the construction of the language of the original act by this court in *Sweet* v. *The Sherwood Ice Co., supra,* the respondent would have very little, if any, support for such a construction. Generally, under well-settled rules of statutory construction, these words would be given their natural and ordinary meaning to effect, if possible, the particular purpose of the section. *State* v. *Wah Lee,* 49 R. I. 491. This rule is applicable to all statutes and especially so to the workmen's compensation act, because of its remedial nature and purpose. *Jules Desurmont Worsted Co.* v. *Julian,* 56 R. I. 97.

What effect should be given to the fact that the amendment of sec. 7 followed within a month after the decision in the *Sweet* case construing that particular section? We are of the opinion that it cannot control the construction which we should give to the amendment. It is not, in our opinion, clear that there is such a definite connection between the subsequent action of the legislature in amending sec. 7 with the court's construction of it in the *Sweet* case as to require us to disregard the natural and ordinary meaning of the words "a justifiable cause" or, as was said in *State* v. *Wah Lee, supra,* their popular meaning. This would be a technical construction, and such a construction is to be avoided in construing the workmen's compensation act, unless it is clear that the legislature employed the words in a technical sense. This is the rule of construction adopted in England for the construction of the English workmen's compensation act. *Smith* v. *Coles,* 2 K. B. 827 (1905);

*Rogers* v. *Cardiff Corp.*, 8 W. C. C. 51; *Adams* v. *Shaddock*, 2 K. B. 859 (1905).

The respondent has cited to us several Michigan cases in which the supreme court of that state construed the words "living apart for justifiable cause" in the workmen's compensation act of that state. *Kirkley* v. *General Baking Co.*, 217 Mich. 307; *McGee* v. *Columbia Body Co.*, 217 Mich. 479; *Martilla* v. *Quincy Mining Co.*, 221 Mich. 525. These cases support the construction of "a justifiable cause" contended for by the respondent, but we are not constrained to follow them and to disregard the ordinary meaning of the words.

In the *Kirkley* case, which appears to have been the first case decided after the Michigan act was amended, the court said that those words, when applied to the separation of husband and wife, had a well defined meaning in Michigan, and it cited several cases in which it had construed those words. It assumed that the legislature, by using those words after these cases had construed them, must have intended that they should be understood and interpreted as they were thus construed by the court. Apparently the court felt that under such circumstances it was controlled by its own construction of the words in those prior cases, even though those cases were not cases under the workmen's compensation act.

The supreme court of Massachusetts, previously to the case of *Kirkley* v. *General Baking Co.*, *supra*, had decided, for much the same reason as the Michigan court, that the words "living apart for justifiable cause" in the workmen's compensation act of that state, meant such living apart as was "due to some failure of duty or misconduct on the part of the husband . . . ." *Newman's Case*, 222 Mass. 563, 566. In that case the court said that those words had been interpreted by it in numerous decisions "in divorce proceedings brought by a wife against her husband for desertion, in petitions brought by her for separate support and main-

tenance, as well as in actions brought against the husband to recover for necessaries furnished to his wife." Therefore, it said: "These words have acquired a peculiar and appropriate meaning in the law", which it was bound to follow. That court also drew the inference that the legislature of Massachusetts must have intended that such words should be understood and interpreted as they had been previously and uniformly construed by the court, especially as there was nothing in the act to show a contrary intention.

This rule of statutory construction is familiar and, under certain circumstances such as existed in those states, it is useful. But it so happens that we are not in the situation that the Michigan and Massachusetts courts found themselves in, when called upon in the above-cited cases to construe the words, "justifiable cause" in their statutes. We are free to treat those words in our statute unhampered and uncontrolled by any prior construction of them by this court, as far as we are aware.

Aside from this fact, there is also grave doubt in our minds that a prior construction in divorce cases, or in other proceedings having to do with the rights and obligations incident to the marital status, of statutory words applying to that relationship, ought to be deemed controlling by the court in construing the same words in an entirely different statute and especially in a workmen's compensation act. The principle of construction in the two classes of cases is not the same. The policy of the law is to preserve the marriage status and to discountenance anything that tends to weaken or destroy it. Consequently a strict construction rather than a liberal one is always given to words of a statute that declare other rights which have a tendency to loosen or dissolve the marital bond. On the contrary, as before stated, the policy of the law is to give a broad and liberal construction of the workmen's compensation act in order to effectuate the remedial purposes of such legislation. Application to the language of the workmen's compensation act of a pre-

vious construction given to the same language in divorce statutes, it seems to us, would be clearly a technical construction.

We are of the opinion, therefore, that these words "living apart for a justifiable cause" in our workmen's compensation act do not mean only such living apart by the wife from her husband as would be a defense to her in a petition for divorce. There may be other occasions when living apart would be justifiable within the intendment of the act. Whether or not such living apart for reasons not amounting to a defense to a petition for divorce constitutes in any given case a justifiable cause is a question of law and fact for the trial justice to decide, and his finding on the facts is final, although his decision on the law to be applied to the facts is subject to review.

In the instant case there is evidence upon which to support the finding of the trial justice. He having found as a fact that the petitioner was living apart from her husband for a justifiable cause, the next question was one of law, namely, was she living apart from her husband for a justifiable cause within the meaning of the statute. The trial justice decided that she was, and for the reasons just stated, we are of the opinion that his decision is correct.

The trial justice's findings, that the petitioner was mentally competent to sue for and receive the awards of compensation, and that Herbert Broughey was a dependent within the meaning of the act, are also based upon legal evidence and will not be disturbed.

One last question remains to be considered. Was the award of compensation for the support of the petitioner and Herbert Broughey at the rate of $14 a week from the date of Michael Broughey's death correct? The statute—P. L. 1936, chap. 2358, sec. 6—provides that: "If death results from the injury, the employer shall pay the dependents of the employee, wholly dependent upon his earnings for support at the time of his injury, a weekly payment equal to

one half of his average weekly wages, earnings, or salary, but not more than twelve dollars, nor less than eight dollars a week for a period of five hundred weeks from the date of the injury, except as hereinafter provided: in case the dependent is the widow of such employee upon whom are dependent one or two children of the deceased employee including adopted and step-children under the age of eighteen years or over said age, but physically or mentally incapacitated from earning, the employer shall pay such widow not more than fourteen dollars a week. . . .."

Michael Broughey's average wage was $20 a week. One half of that average is $10 a week. The trial justice, having found the wife and child dependent, construed the proviso to mean that the compensation payable to the widow could not be in a less amount than $14, regardless of the workman's average weekly wage. The respondent contends that this is clearly an erroneous construction of the statute and that what the proviso really does is exactly what it says, namely, to fix a maximum beyond which the award cannot go, even though one half of the workman's average weekly wage exceeds $14 a week. The petitioner, on the other hand, argues, in support of the trial justice's award, that the proviso stands by itself and is tantamount to what she calls a legislative concession to a widow who is left with a dependent to care for.

We are of the opinion that this latter contention is without merit and that the trial justice's construction of the statute is clearly erroneous. It is plain from the above-quoted provision of sec. 6 that the legislature intended to limit the award of compensation to dependents in the one case to not more than $12 a week, even though such sum might be less than one half of the average weekly wage of the deceased workman, and, in the second case, where the dependents consist of the widow and one or two dependent children, to not more than $14 a week, although such sum might also be less than one half of the average weekly wage

of the workman. In other words, the legislature, in employing the form "not more than twelve dollars a week" in the first part of the section and "not more than fourteen dollars a week" in the proviso, was doing the same thing in each instance, namely, setting an absolute arbitrary maximum beyond which the trial justice could not go in awarding the widow and dependents compensation at the rate of one half of the workman's average weekly wage.

Clearly the legislature did not, in the proviso, authorize the trial justice to give as much as $14 a week, regardless of the fact that such sum might be greater than one half the average weekly wages of the workman. The natural and, it seems to us, the obvious interpretation of the legislature's language is that the dependent or dependents would be entitled to one half the average weekly wage, but never less than eight dollars a week and not more than twelve dollars in the first instance and not more than fourteen dollars a week in the second, regardless of the fact that such maximum in either case might be less than one half of such wages.

The respondent's contention that if any award is made it should be in the sum of $10 a week for a period of five hundred weeks is correct, and its appeal is, therefore, sustained on this ground.

On July 11, 1938, the parties may present to us a form of decree, in accordance with this opinion, to be entered in the superior court.

*Ambrose Kennedy, James T. Greene,* for petitioner.
*Clifford A. Kingsley, Francis V. Reynolds,* for respondent.